UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MJK FAMILY LLC, a Michigan limited
liability company, AIR BANKS, LLC, a Florida
limited liability company, WINDSONG LLC, a
Michigan limited liability company, MARK II
AVATION, LLC, a Nevada limited liability
company, CONVENIENSO, LLC, an Illinois
limited liability company, S4AIR LLC, a
Michigan limited liability company, NATIONAL
CITY BANK as Trustee for THE DAVID L.
HAYS IRA, a national banking association,
ROBERT SKANDALARIS, an individual, and
DON DEFOSSET, an individual,

Case No. 2:09-cv-12613-JF-DAS
Hon.: John Feikens

     Plaintiffs,

v.

CORPORATE EAGLE MANAGEMENT
SERVICES, INC., a Michigan corporation, and
RICHARD M. NINI, in his capacity as an Officer
and Director of Corporate Eagle Management
Services, Inc., and as an individual,

     Defendants.

/

| | |
|---|---|
| MILLER CANFIELD PADDOCK AND STONE, PLC<br>By:  Richard C. Sanders P25210<br>Attorneys for Plaintiffs<br>150 W. Jefferson, Suite 2500<br>Detroit, MI  48226-4415<br>(313) 963-6420- Telephone<br>(313) 496-7500 – Facsimile<br>sanders@millercanfield.com | KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.<br>By:  Frederick A. Berg P38002<br>Attorneys for Defendants<br>400 Renaissance Center, Suite 3400<br>Detroit, MI  48243-1618<br>(313) 259-8300 - Telephone<br>(313) 259-1451 - Facsimile<br>fberg@kotzsangster.com |

/

**DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION PURSUANT
TO PARTIES' ARBITRATION AGREEMENT OR, ALTERNATIVELY, TO STAY
PENDING COMPLETION OF ARBITRATION**

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

Defendants Corporate Eagle Management Services, Inc. ("CEMS") and Richard M. Nini ("Nini") by and through their attorneys, Kotz, Sangster, Wysocki and Berg, P.C., hereby move this Honorable Court to compel arbitration of Counts I, II and III of Plaintiffs' Complaint and to dismiss those counts pursuant to Fed. R. Civ. P. 12(b)(6) and for the reasons stated in the Brief in Support filed herewith.

1.    This is a case involving allegations of breach of fiduciary duty by CEMS (Counts I, II and III of the Complaint) and securities claims against CEMS and Nini (Counts IV-XI of the Complaint) related to Plaintiffs' investment in and membership in Corporate Eagle Jet, LLC ("CEJ").

2.    As acknowledged in the Complaint, Plaintiffs and CEMS entered into an Operating Agreement.

3.    The Operating Agreement contains a written agreement to arbitrate any and all disputes, claims or controversies involving the interpretation of the Operating Agreement, any of its provisions, terms or conditions, and termination or enforcement of a Member's obligations or rights.

4.    The Operating Agreement containing the arbitration agreement was executed by each of the Plaintiffs and CEMS.

5.    The arbitration agreement requires arbitration of at least Counts I, II and III of the Complaint.

6.    Thus, Counts I, II and III should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, the remaining claims should be stayed pending resolution of the arbitration.

2

7.   Pursuant to Local Rule 7.1(a) of the United States District Court for the Eastern District of Michigan, concurrence in the relief requested herein was sought from Plaintiffs' counsel on September 8, 2009, and was not forthcoming.

WHEREFORE, Defendants Corporate Eagle Management Services, Inc. and Richard M. Nini prays that this Honorable Court grant its motion to compel arbitration and dismiss Counts I, II and III of the Complaint, or, alternatively, to stay Counts I, II and III of the Complaint; award Defendants its costs and attorneys' fees; and grant Defendants such other and further relief as is just and equitable.

Date: September 8, 2009                KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.


                              s/ FREDERICK A. BERG
                              By:  Frederick A. Berg P38002
                              Attorneys for Defendants
                              400 Renaissance Center, Suite 3400
                              Detroit, MI  48243-1618
                              (313) 259-8300 - Telephone
                              (313) 259-1451 - Facsimile
                              fberg@kotzsangster.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MJK FAMILY LLC, a Michigan limited
liability company, AIR BANKS, LLC, a Florida
limited liability company, WINDSONG LLC, a
Michigan limited liability company, MARK II
AVATION, LLC, a Nevada limited liability
company, CONVENIENSO, LLC, an Illinois
limited liability company, S4AIR LLC, a
Michigan limited liability company, NATIONAL
CITY BANK as Trustee for THE DAVID L.
HAYS IRA, a national banking association,
ROBERT SKANDALARIS, an individual, and
DON DEFOSSET, an individual,

     Plaintiffs,

v.

CORPORATE EAGLE MANAGEMENT
SERVICES, INC., a Michigan corporation, and
RICHARD M. NINI, in his capacity as an Officer
and Director of Corporate Eagle Management
Services, Inc., and as an individual,

     Defendants.

Case No. 2:09-cv-12613-JF-DAS
Hon.: John Feikens

---

MILLER CANFIELD PADDOCK AND STONE, PLC
By:  Richard C. Sanders P25210
Attorneys for Plaintiffs
150 W. Jefferson, Suite 2500
Detroit, MI  48226-4415
(313) 963-6420- Telephone
(313) 496-7500 – Facsimile
sanders@millercanfield.com

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.
By:  Frederick A. Berg P38002
Attorneys for Defendants
400 Renaissance Center, Suite 3400
Detroit, MI  48243-1618
(313) 259-8300 - Telephone
(313) 259-1451 - Facsimile
fberg@kotzsangster.com

_/_

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND COMPEL
ARBITRATION PURSUANT TO PARTIES' ARBITRATION AGREEMENT OR,
ALTERNATIVELY, TO STAY PENDING COMPLETION OF ARBITRATION**

i

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................................iii

INDEX OF EXHIBITS.......................................................................................................v

ISSUES PRESENTED.......................................................................................................vi

CONTROLLING/MOST APPROPRIATE AUTHORITY.......................................................vii

I.     INTRODUCTION ........................................................................................................ 1

II.    RELEVANT FACTS AND PROCEDURAL HISTORY ................................................. 1

III.   LEGAL STANDARD.................................................................................................. 5

IV.    CHOICE OF LAW. .................................................................................................... 7

       A.    The Federal Arbitration Act and Federal Law Govern this Dispute.....................7

       B.    Michigan Law Governs the Formation of the Arbitration Agreement. ................7

V.     ANALYSIS................................................................................................................. 9

       A.    The Arbitration Agreement is Valid. ..................................................................9

       B.    The Claims Made By Plaintiff's With Regard to the Alleged Breaches of
             Fiduciary Duties by CEMS as CEJ's Manager are In the Scope of the
             Arbitration Agreement. ..................................................................................10

       C.    Congress Has Not Expressed Any Intention to Preclude Arbitration of these
             Claims. ..........................................................................................................11

       D.    The Claims Should Be Dismissed Without Prejudice. .......................................12

VI.    CONCLUSION AND RELIEF REQUESTED .......................................................... 13

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.   ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

91106:113\Doc#27

**INDEX OF AUTHORITIES**

**STATUTES**

Mich. Comp. Laws § 450.4404 ................................................................ 11

Mich. Comp. Laws § 600.5001 ................................................................. 9

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)

**CASES**

Arnold v. Arnold Corp., 920 F.2d 1269 (6th Cir. 1990) ............................... 5

Bassett v. National Collegiate Athletic Ass'n, 528 F.3d 426 (6th Cir. 2008) ............. 1

Clement v. Comstock, 2 Mich. 359 (1852) .................................................. 9

F J Siller & Co v. Hart, 400 Mich. 578, 255 N.W.2d 347 (1977) ......................... 7, 9

Fazio v. Lehman Brothers, Inc., 340 F.3d 386 (6th Cir. 2003) ...................... 10, 11

Glazer v. Lehman Brothers, Inc., 394 F.3d 444 (6th Cir. 2005) ........................ 7, 8

Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) ............. 7

Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ................................................................................ 6

Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507 (6th Cir. 1999) .................. 1

Griffin v. Gutter Grate of Troy/Birmingham LLC, 546 F. Supp.2d 469 (E.D. Mich. 2008) .................................................................................. 12

High v. Capital Senior Living Properties 2-Heatherwood, Inc., 594 F. Supp.2d 789 (E.D. Mich. 2008) ...................................................................... 1

Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568 (6th Cir. 2003) ...................................................................... 6

Liskey v. Oppenheimer & Co., Inc., 717 F.2d 314 (6th Cir. 1983) ...................... 12

Kotz, Sangster, Wysocki and Berg, P.C.   Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

91106.113\Doc#27

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624 (6th Cir. 2004) ...........................................10

*Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) .........................................................................................11

*Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 752 (W.D.Mich. 2008) ................................................................12

*Nixon v. Wilmington Trust Co.*, 543 F.3d 354 (6th Cir. 2008) ......................................................1

*Northern Ill. Gas Co. v. Airco Indus. Gas Co.*, 676 F.2d 270 (7th Cir. 1982) .............................7

*Rex v. CSA-Credit Solutions of America Inc.*, 507 F. Supp.2d 788 (W.D. Mich. 2007) ........8, 12

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ........................................................................1

*Shammami v. Broad Street Securities, Inc.*, 544 F. Supp.2d 585 (E.D. Mich. 2008)...................6

*Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852 (1984)............................................7

*Watts v. Polaczyk*, 242 Mich. App. 600, 619 N.W.2d 714 (2000)...............................................9

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997)............................................................1

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

91106.113\Doc#27

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| **A** | Executive Summary |
| B | Investment Proposal |
| C | Article 9 of the Draft Operating Agreement |
| D-1 | MJK Family, LLC Subscription Agreement |
| D-2 | Air Banks, LLC Subscription Agreement |
| D-3 | Windsong, LLC Subscription Agreement |
| D-4 | Mark II Aviation, LLC Subscription Agreement |
| D-5 | Convenienso, LLC Subscription Agreement |
| D-6 | S4 Air, LLC Subscription Agreement |
| D-7 | Holdon f/b/o David L. Hayes Custodial IRA Subscription Agreement |
| D-8 | Robert Skandalaris Subscription Agreement |
| D-9 | Don DeFosset Subscription Agreement |
| D-10 | Al Air, LLC Subscription Agreement |
| E | Executed Operating Agreement |

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

91106.113\Doc#27

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.   ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

## ISSUES PRESENTED

1.   Whether Plaintiffs' claims regarding alleged breaches of fiduciary duties by the manager of the limited liability company are subject to and within the scope of a valid agreement to arbitrate.

2.   Whether Plaintiffs' claims regarding alleged breaches of fiduciary duties by the manager should be dismissed or stayed.

91106.113\Doc#27

**CONTROLLING/MOST APPROPRIATE AUTHORITY**

**II.   RELEVANT FACTS AND PROCEDURAL HISTORY**

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)
*Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 (6th Cir. 2008)
*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)

**III.   LEGAL STANDARD.**
*Shammami v. Broad Street Securities, Inc.*, 544 F. Supp.2d 585 (E.D. Mich. 2008)
*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).

**IV.   CHOICE OF LAW.**
   **A.   *The Federal Arbitration Act and Federal Law Govern this Dispute.***
   *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 859 (1984),
   *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).
   **B.   *Michigan Law Governs the Formation of the Arbitration Agreement.***
   *Rex v. CSA-Credit Solutions of America Inc.*, 507 F. Supp.2d 788 (W.D. Mich. 2007)

**V.   ANALYSIS.**
   **A.   *The Arbitration Agreement is Valid.***
   *F J Siller & Co v Hart*, 400 Mich. 578, 581, 255 N.W.2d 347 (1977)
   MICH. COMP. LAWS § 600.5001
   *Watts v. Polaczyk*, 242 Mich. App. 600, 619 N.W.2d 714 (2000).

   **B.   *The Claims Made By Plaintiffs are Within the Scope of the Arbitration Agreement.***
   *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)

   **C.   *Congress Has Not Expressed Any Intention to Preclude Arbitration of these Claims.***
   MICH. COMP. LAWS § 450.4404
   *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

   **D.   *The Claims Should Be Dismissed Without Prejudice.***
   *Liskey v. Oppenheimer & Co., Inc.*, 717 F.2d 314 (6th Cir. 1983).
   *Griffin v. Gutter Grate of Troy/Birmingham LLC*, 546 F. Supp.2d 469 (E.D. Mich. 2008).

91106.113\Doc#27

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.   ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

## I.   INTRODUCTION

Plaintiffs, as members of Corporate Eagle Jet, LLC ("CEJ"), each executed and entered into an Operating Agreement for CEJ which set forth the rights and obligations of Plaintiffs as CEJ's members and set forth the terms and scope of the management duties of Defendant Corporate Eagle Management Services, Inc. ("CEMS") as manager of CEJ.   Moreover, Plaintiffs agreed to arbitrate any claims concerning the rights or obligations of CEJ members or claims regarding the terms, conditions or provisions of the Operating Agreement.   For the reasons set forth below, CEMS and Defendant Richard M. Nini ("Nini") requests an order enforcing Plaintiffs' agreement to arbitrate.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

CEMS, formerly Tradewinds Aviation, Inc., was established over twenty years ago by Nini. Pls.' Compl. ¶14.[1, 2]   Nini is CEMS's majority shareholder, its President, CEO and on its

---

[1] The "facts" set forth herein are based on or repeated from Plaintiffs' Complaint and additional documents (as discussed in note 2, *infra*). Defendants dispute Plaintiffs' version of the facts. Nothing in this Brief is an admission to Plaintiffs' allegations. Plaintiff's version is relied on only to bring this Rule 12(b)(6) motion.

[2] The disputed facts are based upon the Plaintiffs' Complaint as well as documents relied upon by the Plaintiffs in filing their suit, documents incorporated by reference in the Complaint and documents central to the understanding of the factual basis of Plaintiffs' claims. This Motion is brought pursuant to Fed. R. Civ. P. 12 and while courts generally do not look beyond the terms of the Complaint in a Motion to Dismiss, the Complaint is deemed to include any written instrument attached to it or any statements or documents incorporated in it by reference or central to the understanding of the factual basis of plaintiff's claims. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Further, in considering a Motion to Dismiss, courts will also consider documents that the plaintiffs either possessed or knew about and upon which the plaintiffs relied in bringing the suit. *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 (6th Cir. 2008) (District court may consider, on motion to dismiss, a document referred to in the Complaint that is not formally incorporated where the document is central to the claims); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (when considering a motion to dismiss, a court may consider exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein); *High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp.2d 789, 796 (E.D. Mich. 2008) (in considering a motion to dismiss, a court may consider a document referred to in the pleadings and integral to the claims without converting the motion to dismiss for failure to state a claim into one for summary judgment). *See also, Rothman v.* Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citations omitted).

1

Board of Directors. Pl's. Compl. ¶15. CEMS manages and maintains aircraft and sells and leases fractional shares in aircraft. *Id.* at ¶17. In 2006, Nini and CEMS sought investors for a business that would become CEJ, which was to be a transaction company that would purchase aircraft and sell fractional shares of that aircraft. Pls.' Compl. ¶22-24. As Plaintiffs state in their Complaint, a binder of written documents was prepared as an "Investment Presentation" (defined in Plaintiffs' Complaint as the "Offering Materials") and presented to potential investors, including Plaintiffs. Pls.' Compl. ¶26-28. As Plaintiffs refer to and rely upon in their Complaint, the Offering Materials included an Executive Summary, an Investment Proposal, a proposed Operating Agreement, a Subscription Agreement and additional documents. Pls.' Compl. ¶28.

The Executive Summary detailed the fact that CEMS (then Tradewinds) did not have its own aircraft inventory or its own transaction company and spells out that the *existing* Corporate Eagle Flight Department is a non-traditional fractional and charter program. *Exhibit A*, page 1, Executive Summary. The Investment Proposal, referred to in and relied upon in Plaintiffs' Complaint, detailed the plan for an initial capitalization of $5,000,000.00, of which $1,200,000 would go to immediately purchase a 30% equity position for CEJ in CEMS. Pls.' Compl. ¶23. The Investment Proposal is attached as *Exhibit B*. The Investment Proposal also detailed that it would "become the primary transaction company for the Corporate Eagle Flight Department" and that CEMS would purchase and sell or lease "five Raytheon Hawker 800XP aircraft in the Corporate Eagle Flight Department Michigan and Florida facilities." *Exhibit B*, Investment Proposal, page 1; Pls.' Compl. ¶28-29.

2

In addition, as stated in the Plaintiffs' Complaint, the Offering Materials included a draft operating agreement which set forth at Section 9.1 a proposed arbitration agreement for all disputes that involve "the interpretation of [the Operating] Agreement or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights." Article 9.1 Draft Operating Agreement at page 28, §9.1.   Article 9 of the Draft Operating Agreement is attached as *Exhibit C*.

Each of the Plaintiffs decided to invest $500,000 apiece in CEJ, each of them certifying that they are an "Accredited Investor" within the definition of the Securities Act of 1933.  The certifications are attached as *Exhibit D*.  That is, each of the Plaintiffs individually has a high net worth and income, such that in a private offering such as the one at issue here, the offeror has no duty to provide the potential Accredited Investor with any information whatsoever. Rule 501 of Regulation D of the Securities Act of 1993.

In December of 2006, Plaintiffs each entered into and executed the Operating Agreement. The executed Operating Agreement is attached as *Exhibit E*.  In their Complaint, Plaintiffs rely on the Operating Agreement to establish their factual allegations regarding the purpose of CEJ (paragraph 29 of the Complaint), the scope of authority of CEMS to manage CEJ and the origin of CEMS's fiduciary duty to CEJ. Pls.' Compl. ¶30, 38 and 39.  The Operating Agreement contains precisely the same agreement to arbitrate as the draft Operating Agreement as Article 9 of the Operating Agreement (the "Arbitration Agreement").  In relevant part, that agreement to send disputes to arbitration is set forth as follows:

> 9.1      Arbitration.  **Any and all disputes, claims or controversies involving the interpretation of this Agreement or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights hereunder ("Disputes")** shall be submitted in writing ("Notice") by a

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

91106.113\Doc#27

Member to the Manager within thirty (30) days of the occurrence of any Dispute. A meeting shall be held within forty-five (45) days from the submission of the written Notice between the Member and the Manager or any designated agent of the Manager at a neutral location for the purpose of attempting in good faith to negotiate a resolution of the Dispute. **If the Dispute is not resolved within forty-five (45) days of the meeting between the Manager and the Member, the Dispute shall be submitted to binding arbitration** and exclusively resolved in accordance with the then prevailing Commercial Arbitration Rules ("Rules") of the American Arbitration Association ("AAA"); provided, however, that notwithstanding anything to the contrary contained in the Rules, the arbitrator shall apply the laws governing this Agreement as set forth in Section 9.3 herein and shall not act as an amiables compositeur. The arbitration is to be conducted by a single arbitrator in Southfield, Michigan, in accordance with the Rules of the AAA existing as of the time the arbitration is commenced. . . . Any arbitration proceeding under this Agreement must be commenced no later than one (1) year after the Dispute arose. Failure to timely commence an arbitration proceeding constitutes both an absolute bar to the commencement of any arbitration proceedings with respect to the Dispute, and a waiver of the Dispute.

(emphasis added). *Exhibit E,* page 27, §9.1. The Arbitration Agreement also specifies that:

"[i]n making an award, the arbitrator shall be governed by the provisions of this Agreement and the common law and statutes of the State of Michigan. . . . [J]udgment on the award or determination rendered pursuant to this Agreement may be entered in any court pursuant to Section 9.3. . . . This Agreement is specifically made subject to and incorporates provisions of Michigan law governing arbitrations, MCLA 600.5001; MSA 27A.5001, as amended . . ."

*Exhibit E,* page 28, §9.2. Section 9.3 of the Arbitration Agreement requires the Agreement to be construed and enforced by Michigan law and sets venue in the Circuit Court for Oakland County, Michigan. *Exhibit E,* page 28, §9.3.

On July 2, 2009, Plaintiffs filed an eleven count Complaint including three counts against CEMS alleging state law claims for breaches of fiduciary duty owed to the Plaintiffs as the manager of CEJ (Counts I-III). The basis of these claims arises out of the agreed upon terms and conditions under which CEMS was to manage CEJ. Specifically, Plaintiffs allege that CEMS placed its and Nini's interests ahead of CEJ's by maintaining business relationships that

4

compromised CEMS's ability "to manage CEJ in Plaintiffs' best interest" (Count I), diverted "CEJ's business opportunities to other companies" (Count II), and failed to listen to the advice of the CEMS board or to "fully research, investigate, develop and execute the business plan" and options to market sell or lease fractional interests in the 800XP (Count III). The scope and terms of the management of CEJ are established and set forth in the Operating Agreement, which requires that all "claims or controversies involving the interpretation of [the Operating] Agreement or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights . . . be submitted to binding arbitration." *Exhibit E*, page 27, ¶9.1

Plaintiffs state law fiduciary claims are subject to an agreement to arbitrate as they attempt to enforce the rights of the Plaintiffs as members of CEJ and CEMS's obligations as the manager of CEJ as set forth under the Operating Agreement. Plaintiffs should be compelled to arbitration and Counts I, II and III of their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, Counts I, II and III should be stayed pending the resolution of the arbitration proceedings before the American Arbitration Association ("AAA").

## III. LEGAL STANDARD.

When presented with a motion to compel arbitration, the court, pursuant to the Federal Arbitration Act ("FAA"), "shall hear the parties and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court *shall make an order directing the parties to proceed to arbitration in accordance with the terms of their agreement . . . .*" *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1276-77 (6th Cir. 1990) (emphasis added), *quoting* 9 U.S.C. § 4.

5

Federal law creates "a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 650, 106 S. Ct 1415, 89 L. Ed. 2d 648 (1986)). "The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity.'" *Shammami v. Broad Street Securities, Inc.*, 544 F. Supp.2d 585, 587 (E.D. Mich. 2008) (quoting 9 U.S.C. §2). "The FAA represents a 'liberal policy favoring arbitration agreements,' and 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Shammami v. Broad Street Securities, Inc.*, 544 F. Supp.2d 585, 587 (E.D. Mich. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)). The party opposing an arbitration agreement bears the burden of establishing the dispute is nonarbitrable. *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

Under the FAA, a district court must make four threshold determinations before compelling arbitration:

> "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."

6

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D.* Byrider,

228 F.3d 709, 714 (6th Cir. 2000). In assessing whether an agreement to arbitrate has been

made, courts examine the language of the contract in light of the strong federal policy in favor

of arbitration; likewise, any ambiguities in the contract or doubt as to the parties' intentions

should be resolved in favor of arbitration. *Great Earth Companies, Inc. v. Simons*, 288 F.3d

878, 889 (6th Cir. 2002).

## IV. CHOICE OF LAW.

### A. *The Federal Arbitration Act and Federal Law Govern this Dispute.*

The FAA "'creates a body of federal substantive law' . . . applicable in state or federal

court." *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 859 (1984), citing *Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n.32, 103 S. Ct. 942 n.32

(1983). "[F]ederal arbitration law governs the analysis of arbitration provisions in any contract

evidencing a transaction in interstate commerce," even if the parties agreed to a "choice of law

provision." *Northern Ill. Gas Co. v. Airco Indus. Gas Co.*, 676 F.2d 270, 274-75 (7th Cir.

1982). Further, "the FAA preempts state law regarding arbitration." *Glazer v. Lehman*

*Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). Here, the Operating Agreement, and the

Arbitration Agreement within it, are between CEMS, a Michigan corporation, and Plaintiffs, a

mixture of Michigan, Florida and Illinois entities and residents. As a result, the Arbitration

Agreement and the instant motion are governed by the FAA and federal arbitration doctrine.

### B. *Michigan Law Governs the Formation of the Arbitration Agreement.*

Michigan law is the appropriate body of law to determine whether a valid arbitration

agreement exists between the Plaintiffs and CEMS. Before a court "can send a case to

7

arbitration, [it] must first determine whether a valid agreement to arbitrate exists . . . In making this determination, 'ordinary state law principles that govern the formation of contracts' will apply to this analysis." *Glazer*, 394 F.3d at 450. "In determining what state law governs the formation of the agreement, the inquiry begins with Michigan's choice of law rules because this Court sits in Michigan." *Rex v. CSA-Credit Solutions of America Inc.*, 507 F. Supp.2d 788, 793 (W.D. Mich. 2007) (citing *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001). "Under Michigan law, a contractual choice of law provision is valid unless: (i) 'the chosen state has no substantial relationship to the parties or the transaction,' or the chosen state's law "'would be contrary to the fundamental policy of a state which has a materially greater interest than the chosen state.'"" *Rex*, 507 F. Supp.2d at 793 (quoting *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 126, 528 N.W.2d 698 (1995) (citation omitted)).

The Arbitration Agreement contains a choice of law provision that requires the agreement to be "construed and enforced in accordance with and governed by the internal laws of the state of Michigan . . ." *Exhibit E*, page 27, §9.3. Defendant CEMS is based in Michigan, which satisfies the first condition. *Rex*, 507 F. Supp.2d at 793. Florida is the only other state which has a substantial interest in this matter[3] and there is no aspect of Michigan law that would be contrary to the fundamental policy of Florida. Thus, Michigan law should govern the analysis of whether a valid agreement to arbitrate was formed.

---

[3] While Florida may have an interest, Defendants maintain that Michigan has the greater interest: 6 out of 11 parties are domiciled in Michigan, while only 2 parties are domiciled in Florida; the transaction occurred in Michigan; and the assets of CEJ are located in Michigan.

8

91106.113\Doc#27

**V. ANALYSIS.**

**A. *The Arbitration Agreement is Valid.***

The parties formed a valid statutory arbitration agreement under Michigan law. Michigan has long recognized that a distinction exists between statutory and common-law arbitration. *Clement v. Comstock*, 2 Mich. 359 (1852); *F J Siller & Co v Hart*, 400 Mich. 578, 581, 255 N.W.2d 347 (1977) (citing *Frolich v. Walbridge-Aldinger Co*, 236 Mich. 425, 429; 210 N.W. 488 (1926)). Statutory arbitration is provided for in MCL 600.5001 *et seq*. In order for an agreement to qualify for statutory arbitration, it must meet certain requirements:

(1) All persons, except infants and persons of unsound mind, may, by an instrument *in writing*, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, *agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission*.

(2) A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that *a judgment of any circuit court may be rendered upon the award made pursuant to such agreement*, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter.

MICH. COMP. LAWS § 600.5001. The Arbitration Agreement complies with the statute: it is in writing, allows any circuit court to enter judgment on the award and specifically incorporates the requirements of MICH. COMP. LAWS § 600.5001. Moreover, Plaintiffs voluntarily entered into the written Arbitration Agreement as part of the Operating Agreement and are presumed to have read the contract they signed. *Watts v. Polaczyk*, 242 Mich. App. 600, 619 N.W.2d 714

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

(2000). Indeed, Plaintiffs rely on the Operating Agreement in support of their claims, affirming the Plaintiffs' recognition of the enforceability of the Operating Agreement in general and, more specifically, the Arbitration Agreement. Pls.' Compl. at ¶¶29, 30, 38, 39, 64-77. The arbitration agreement is valid and enforceable.

**B. The Claims Made By Plaintiffs With Regard to the Alleged Breaches of Fiduciary Duties by CEMS as CEJ's Manager are In the Scope of the Arbitration Agreement.**

Plaintiffs' state law fiduciary claims are within the scope of the Arbitration agreement and must be resolved in an arbitration proceeding as set forth in the Operating Agreement. "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement." *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) (citing *Stout*, 228 F.3d at 714). "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395. If the allegations underlying the claims touch matters covered by the agreement, the claims are arbitrable. *Id.* (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987). The Operating Agreement concerns the duties and rights of not only the Plaintiffs, but of CEMS as the manager as well. Certainly their claims arising out of the fiduciary duty created by that agreement "touch matters" covered by the agreement and the state law fiduciary claims are arbitrable.

Furthermore, Plaintiffs entered into a broad arbitration agreement to arbitrate *"[a]ny and all disputes, claims or controversies involving the interpretation of this Agreement or any of the*

10

*provisions, terms, conditions, termination or enforcement of a Member's obligations or rights*"
under the Operating Agreement. *Exhibit E*, page 27, §9.1 (emphasis added). Broad agreements
to arbitrate, like the one in this matter, are "taken at their word." *Id.* at 396. Thus, where the
claims arise out of, or make reference to, the operative agreements or duties undertaken
thereunder, the claims are subject to arbitration. *Id.* Plaintiffs bring Counts I, II and III against
CEMS for alleged breaches of fiduciary duties to them as members of CEJ arising out of
CEMS's role as manager for CEJ – a role with rights and obligations that are created by and
arising under the Operating Agreement.     The claims are within the broad scope of the
Arbitration Agreement and are arbitrable.

### C. *Congress Has Not Expressed Any Intention to Preclude Arbitration of these Claims.*

Plaintiffs' claims for breach of fiduciary duties against CEMS as the manager of CEJ
arise out of state law.  MICH. COMP. LAWS § 450.4404 sets forth the duties of a manager of a
Michigan limited liability company, such as CEJ.   In relevant part, the statute requires a
manager to "discharge his or her duties as a manager in good faith, with the care an ordinarily
prudent person in a like position would exercise under similar circumstances, and in a manner
he or she reasonably believes to be in the best interests of the limited liability company."
MICH. COMP. LAWS § 450.4404.  As a general rule, statutory claims are arbitrable unless "it is
the congressional intention expressed in some other statute on which the courts must rely to
identify any category of claims as to which agreements to arbitrate will be held
unenforceable." *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.
614, 627, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985).  The burden is on the party opposing
arbitration to show that Congress intended the statutory rights at issue to be nonarbitrable.

11

*Rex*, 507 F. Supp.2d 788, 797 (W.D. Mich. 2007) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)).  Nowhere in the statute regarding the duties of the manager of a Michigan limited liability company, or in any of the statutes regarding the governance of a Michigan limited liability company, does the Michigan legislature, let alone Congress, demonstrate an intention to preclude arbitration of such matters. There is no preclusion of arbitration under the relevant statutes and Plaintiffs should be compelled to arbitrate their claims.

### D. The Claims Should Be Dismissed Without Prejudice.

Counts I, II and III of the Plaintiffs' Complaint should be dismissed.  "Upon finding the arbitration agreement to be valid and enforceable, the Court must determine whether the Complaint should be dismissed or arbitration should be compelled." *Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 752 (W.D.Mich. 2008).  Where a complaint presents both arbitrable and nonarbitrable claims, the Sixth Circuit adopts that rule that the only viable alternative is to sever the arbitrable claims from the nonarbitrable claims and arbitrate following judicial resolution of nonarbitrable claims. *Liskey v. Oppenheimer & Co., Inc.*, 717 F.2d 314, 318 (6th Cir. 1983).  Furthermore, this District agrees with "'[m]ost district courts in this Circuit . . . that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice.'"  *Griffin v. Gutter Grate of Troy/Birmingham LLC*, 546 F. Supp.2d 469, 472 (E.D. Mich. 2008).  Thus, Plaintiffs' claims as set forth under Counts I, II and III should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) and arbitrated following judicial resolution of the Plaintiffs' remaining claims.

## VI.  CONCLUSION AND RELIEF REQUESTED

Plaintiffs' claims for breaches of fiduciary duty by CEMS as the manager for CEJ (Counts I, II and III), which arise under Michigan law are subject to and within the scope of a valid, binding arbitration agreement.  There is no congressional intent to preclude arbitration of these state law claims.  Thus, pursuant to the policies and procedures of this District, Counts I, II and III of Plaintiffs' Complaint should be dismissed without prejudice and arbitrated following judicial resolution of the remaining claims.  Alternatively, Plaintiffs' claims encompassed in Counts I, II, and III should be stayed.


Date:  September 8, 2009                 KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.


                                    s/ FREDERICK A. BERG
                                    By:  Frederick A. Berg P38002
                                    Attorneys for Defendants
                                    400 Renaissance Center, Suite 3400
                                    Detroit, MI  48243-1618
                                    (313) 259-8300 - Telephone
                                    (313) 259-1451 - Facsimile
                                    fberg@kotzsangster.com

91106.113\Doc#27

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MJK FAMILY LLC, a Michigan limited
liability company, AIR BANKS, LLC, a Florida
limited liability company, WINDSONG LLC, a
Michigan limited liability company, MARK II
AVATION, LLC, a Nevada limited liability
company, CONVENIENSO, LLC, an Illinois
limited liability company, S4AIR LLC, a
Michigan limited liability company, NATIONAL
CITY BANK as Trustee for THE DAVID L.
HAYES IRA, a national banking association,
ROBERT SKANDALARIS, an individual, and
DON DEFOSSET, an individual,

     Plaintiffs,

v.

CORPORATE EAGLE MANAGEMENT
SERVICES, INC., a Michigan corporation, and
RICHARD M. NINI, in his capacity as an Officer
and Director of Corporate Eagle Management
Services, Inc., and as an individual,

     Defendants.

Case No. 2:09-cv-12613-JF-DAS
Hon.: John Feikens

_____/

| MILLER CANFIELD PADDOCK AND STONE, PLC | KOTZ, SANGSTER, WYSOCKI AND BERG, P.C. |
|---|---|
| By:  Richard C. Sanders P25210 | By:  Frederick A. Berg P38002 |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 150 W. Jefferson, Suite 2500 | 400 Renaissance Center, Suite 3400 |
| Detroit, MI  48226-4415 | Detroit, MI  48243-1618 |
| (313) 963-6420- Telephone | (313) 259-8300 - Telephone |
| (313) 496-7500 – Facsimile | (313) 259-1451 - Facsimile |
| sanders@millercanfield.com | fberg@kotzsangster.com |

_____/

## CERTIFICATE OF SERVICE

This is to certify that Defendants' Motion to Dismiss Motion to Dismiss and Compel

Arbitration Pursuant to Parties' Arbitration Agreement or Alternatively to Stay Pending

1

Completion of Arbitration, Brief in Support, and this Certificate of Service have been served on this 8th day of September, 2009, in accordance with the Court's Electronic Guidelines.  Notice of Electronic Filing of these documents will be sent to all parties by operation of the Court's electronic filing system.

Date:  September 8, 2009                KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.


                                        _____s/ FREDERICK A. BERG_____
                                        By:  Frederick A. Berg P38002
                                        Attorneys for Defendants
                                        400 Renaissance Center, Suite 3400
                                        Detroit, MI  48243-1618
                                        (313) 259-8300 - Telephone
                                        (313) 259-1451 - Facsimile
                                        fberg@kotzsangster.com