# EXHIBIT C

# OPERATING AGREEMENT
# FOR
# CORPORATE EAGLE JET, LLC
### A Michigan Limited Liability Company

---

THE INTERESTS DESCRIBED AND REPRESENTED BY THIS OPERATING AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT") OR ANY APPLICABLE STATE SECURITIES LAWS ("STATE ACTS") AND ARE RESTRICTED SECURITIES AS THAT TERM IS DEFINED IN RULE 144 UNDER THE ACT. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR QUALIFICATION UNDER THE ACT AND APPLICABLE STATE ACTS OR PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT AND APPLICABLE STATE ACTS, THE AVAILABILITY OF WHICH IS TO BE ESTABLISHED TO THE SATISFACTION OF THE COMPANY, DEFINED HEREIN.

INDEX
TO
OPERATING AGREEMENT
FOR
CORPORATE EAGLE JET, LLC

ARTICLE I - ORGANIZATION ..................................................................................................1
    1.1    Formation of Limited Liability Company ..................................................................1
    1.2    Purpose .........................................................................................................................1
    1.3    Power ...........................................................................................................................2
    1.4    Term .............................................................................................................................2
    1.5    Principal Place of Business ..........................................................................................2
    1.6    Registered Office and Agent .......................................................................................2
    1.7    Initial Membership ......................................................................................................2
    1.8    Status of Entity ............................................................................................................3

ARTICLE II - CAPITALIZATION .............................................................................................3
    2.1    Initial Capital Contributions of Members ...................................................................3
    2.2    Liability for Contributions ..........................................................................................3
    2.3    Enforcement of Obligation to Contribute Capital .......................................................3
    2.4    Additional Funding .....................................................................................................3
    2.5    Membership Interest, Percentage Interests .................................................................5
    2.6    Capital Accounts .........................................................................................................7
            2.6.1    Increases to Capital Account ........................................................................7
            2.6.2    Decreases to Capital Account .......................................................................8
    2.7    Contributions of Promissory Note ..............................................................................8
    2.8    Distribution of Assets in Kind ....................................................................................8
    2.9    Transfer of Membership Interest ................................................................................8
    2.10    Return of Capital ........................................................................................................8
    2.11    Timing of Determination ...........................................................................................9
    2.12    Interest .......................................................................................................................9

ARTICLE III - ALLOCATIONS, DISTRIBUTIONS, AND TAX ELECTIONS ...................9
    3.1    Partnership Tax Treatment ..........................................................................................9
    3.2    Allocation of Profits and Losses .................................................................................9
    3.3    Definition of Net Cash Flow .......................................................................................9
    3.4    Distribution of Net Cash Proceeds ............................................................................10
    3.5    Tax Allocations for Contributed Property ................................................................11
    3.6    Book Accounts ..........................................................................................................11
    3.7    Adjustments upon Liquidation ..................................................................................11
    3.8    Special Allocation Provisions ...................................................................................11
            3.8.1    Special Allocation of Losses Creating Negative Capital Accounts ..........11
            3.8.2    Qualified Income Offset ............................................................................12
    3.9    Minimum Gain ..........................................................................................................12

i

3.10 Minimum Gain Chargeback ......................................................................12
3.11 Curative Allocations.................................................................................13
3.12 Tax Matters Member ...............................................................................13

ARTICLE IV - MEMBERS............................................................................................. 14
4.1 Action by Members Without a Meeting..................................................14
4.2 Limitation on Authority of Members ......................................................14
    4.2.1 Member Not an Agent ..................................................................14
    4.2.2 No Authority..................................................................................14
    4.2.3 Expenditures .................................................................................14
    4.2.4 Indemnification ............................................................................14

ARTICLE V – MANAGEMENT AND OPERATIONS ................................................. 15
5.1 Management.............................................................................................15
5.2 Compensation; Reimbursement ..............................................................17
5.3 Compensation ..........................................................................................17
5.4 Transactions with Affiliates.....................................................................17
5.5 Other Activities Permitted ......................................................................18
5.6 Failure to Take Action.............................................................................18
5.7 Standard of Care, Liability......................................................................18
5.8 Separateness of the Company .................................................................18
5.9 Acknowledgement of and Consent to Fees ............................................19

ARTICLE VI – LIMITATION OF LIABILITY; INDEMNIFICATION; INSURANCE................. 19
6.1 Limitation of Liability .............................................................................19
6.2 Liability of Member to the Company .....................................................20
6.3 Indemnification........................................................................................20
    6.3.1 Indemnification ............................................................................20
    6.3.2 Advance on Indemnification .......................................................20
    6.3.3 Authorization to Indemnify..........................................................21
6.4 Liability Insurance...................................................................................21

ARTICLE VII - TRANSFER OF INTERESTS .............................................................. 21
7.1 Restrictions on Transfer ..........................................................................21
7.2 Rights of Assignee...................................................................................23
    7.2.1 Death, Dissolution or Incompetency of Member .......................23
    7.2.2 Voluntary Transfer.......................................................................23
    7.2.3 Incompetency of Member ............................................................23
    7.2.4 Transfer Resulting from Bankruptcy, Attachment or Judicial Order........23
7.3 Section 754 Election ...............................................................................23
7.4 No Right of Withdrawal..........................................................................24
7.5 Single Representative to Act on Behalf of Successors ..........................24
7.6 Lifetime Transfers ...................................................................................24
7.7 Payment Terms ........................................................................................26
7.8 Date of Closing .......................................................................................26

ARTICLE VIII - DISSOLUTION ........................................................................................ 26
    8.1    Events Causing Dissolution ....................................................................... 26
    8.2    Cessation of Business ................................................................................ 26
    8.3    Winding Up, Liquidation and Distribution of Assets ................................ 27
        8.3.1   Liquidating Member ..................................................................... 27
        8.3.2   Accounting .................................................................................... 27
        8.3.3   Assets Sold .................................................................................... 27
        8.3.4   Allocation ...................................................................................... 27
        8.3.5   Liabilities ...................................................................................... 27
        8.3.6   Reserves ........................................................................................ 27
        8.3.7   Distribution ................................................................................... 27
    8.4    Certificate of Dissolution ........................................................................... 28
    8.5    Post Dissolution Actions ........................................................................... 28
    8.6    Return of Contribution Nonrecourse to Other Members .......................... 28

ARTICLE IX - ARBITRATION ......................................................................................... 28
    9.1    Arbitration ................................................................................................. 28
    9.2    Award; Enforcement ................................................................................. 29
    9.3    Governing Law, Jurisdiction ..................................................................... 29
    9.4    Specific Performance; Injunctive Relief ................................................... 30

ARTICLE X - MISCELLANEOUS ..................................................................................... 30
    10.1   Security Law Restrictions .......................................................................... 30
    10.2   Tax and Fiscal Years ................................................................................. 31
    10.3   Books of Account and Records ................................................................ 31
    10.4   Tax Returns and Financial Reports ........................................................... 31
    10.5   Bank Accounts and Investment of Funds ................................................. 31
    10.6   Consent of Member .................................................................................. 32
    10.7   Covenant to Sign Documents ................................................................... 32
    10.8   Notices ....................................................................................................... 32
        10.8.1 Requirement of a Writing; Permitted Methods of Delivery ................. 32
        10.8.2 Addressees and Addresses .................................................................... 32
        10.8.3 Effectiveness of a Notice ...................................................................... 33
    10.9   Headings ................................................................................................... 34
    10.10 Complete Agreement; Severability .......................................................... 34
    10.11 Default; Waiver ........................................................................................ 34
    10.12 No Third Party Beneficiaries .................................................................... 35
    10.13 Binding Effect of Agreement ................................................................... 35
    10.14 Counterparts .............................................................................................. 35
    10.15 Amendments ............................................................................................. 35
    10.16 Distributions ............................................................................................. 35
    10.17 Conflicts of Interest .................................................................................. 36
    10.18 Assignment ............................................................................................... 36
    10.19 Time for Performance .............................................................................. 37
    10.20 Rights and Remedies; Remedies Not Exclusive ...................................... 37
    10.21 Survival .................................................................................................... 37

      10.22   Indemnification..................................................................................37

# OPERATING AGREEMENT
# FOR
# CORPORATE EAGLE JET, LLC

THIS OPERATING AGREEMENT ("AGREEMENT"), made this ____ day of _____ 2006, effective _____, 2005 between Tradewinds Aviation, Inc., a Michigan corporation ("Tradewinds"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____"), _____ ("_____") (Tradewinds, ____, ____, ____, ____, ____, ____, ____, ____, ____, _____ are hereinafter individually referred to as "Member" and collectively as "Members") and Corporate Eagle Jet, LLC, a Michigan limited liability company ("Company").

## WITNESSETH:

WHEREAS, The Company was formed on _____, 2006; and

WHEREAS, The parties to this Agreement desire to set forth in this Agreement the entire agreement with respect to the capitalization, operation and management of the Company and the rights and duties of the members of the Company, including current and future members of the Company.

NOW, THEREFORE, It Is Agreed:

## ARTICLE I - ORGANIZATION

1.1  <u>Formation of Limited Liability Company</u>.  A limited liability company named Corporate Eagle Jet, LLC, has been formed by the filing of Articles of Organization with the Michigan Department of Labor and Economic Growth, Corporation Division, on _____, 2006 ("Articles").  Except as otherwise expressly provided in this Agreement, the rights and liabilities of the Members and the administration of the affairs of this Company shall be as provided in the Michigan Limited Liability Company Act, as the same may be amended from time to time ("Act").

1.2  <u>Purpose</u>.  The sole purpose of the Company is to (i) acquire from Tradewinds one thousand three hundred eighty-seven (1,387) of newly issued and outstanding shares of the capital stock of Tradewinds ("TRA Interest"), (ii) purchase a previously owned Raytheon Hawker 800XP aircraft ("Aircraft"), (iii) upgrading and refurbishing the Aircraft, (iv) transferring ownership interest in the Aircraft to single purpose limited liability company (the "SPE"), (v) selling and/or leasing the interests of the SPE in quarter or one-eighth incremental shares ("Shares") (Sections 1.2(ii), (iii), (iv) and (v) are collectively referred to as the "Process"), and (vi) repeat the Process once the last Share is sold or leased.

1

1(b)(2)(ii)(b)(2) of the Treasury Regulations. Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit capital account (after giving effect to all contributions, distributions, allocations and other capital account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any capital contribution, and the negative balance of such Member's capital account shall not be considered a debt owed by such Member to the Company or to any other person for any purpose whatsoever.

       8.4    Certificate of Dissolution. Upon the occurrence of any of the events specified in Section 8.1 and after all debts, liabilities and obligations have been paid and discharged or adequate provision has been made therefore and all of the remaining property and assets have been distributed to the Members, a Certificate of Dissolution shall be filed with the Michigan Department of Consumer and Industry Services, Bureau of Commercial Services.

       8.5    Post Dissolution Actions. Upon acceptance for filing of the Certificate of Dissolution, the existence of the Company shall cease and terminate, except for the purpose of suits, other proceedings and appropriate actions as provided in the Act. Any amounts deemed necessary by the Liquidating Manager to provide a reserve for any unforeseen liabilities and obligations may, in the Manager's discretion, be deposited in a bank or trust company upon such terms and for a said period of time as the Manager may determine. The Liquidating Manager shall have authority to distribute any Company property discovered after dissolution, distribute any reserve balances after contingent liabilities have been determined and paid, convey real estate and take such other action as may be necessary on behalf of and in the name of the Company. The remaining assets of the Company shall be distributed to the Member's in accordance with their positive capital account balance.

       8.6    Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of their respective contributions.

### ARTICLE IX - ARBITRATION

       9.1    Arbitration. Any and all disputes, claims or controversies involving the interpretation of this Agreement or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights hereunder ("Disputes") shall be submitted in writing ("Notice") by a Member to the Manager within thirty (30) days of the occurrence of any Dispute. A meeting shall be held within forty-five (45) days from the submission of the written Notice between the Member and the Manager or any designated agent of the Manager at a neutral location for the purpose of attempting in good faith to negotiate a resolution of the Dispute. If the Dispute is not resolved within forty-five (45) days of the meeting between the Manager and the Member, the Dispute shall be submitted to binding arbitration and exclusively resolved in accordance with the then prevailing Commercial Arbitration Rules ("Rules") of the American Arbitration Association ("AAA"); provided, however, that notwithstanding anything to the contrary contained in the Rules, the arbitrator shall apply the laws governing this Agreement as set forth in Section 9.3 herein and shall not act as an amiables compositeur. The arbitration is to be conducted by a single arbitrator in Southfield, Michigan, in accordance with the Rules of the AAA existing as

of the time the arbitration is commenced. Modification to the procedures set forth herein may be made only for exceptional good cause as determined by the arbitrator. In the event either party shall fail, after reasonable advance notice, to appear and participate in the arbitration proceeding, the arbitrator shall be entitled to make a decision and make an award on the basis of evidence, witnesses and arguments presented by the parties so appearing before the arbitrator. Pending decision by the arbitrator with respect to the Dispute, all other obligations of the parties hereto shall continue as contemplated by this Agreement. The Parties shall be entitled to discovery as provided in the Michigan Court Rules of 1985, as amended. The arbitrator shall have no authority to award punitive damages or other damages not measured by the prevailing party's actual damages, and may not, in any event, make any ruling, finding or award that does not conform to the provisions of this Agreement. Any arbitration proceeding under this Agreement must be commenced no later than one (1) year after the Dispute arose. Failure to timely commence an arbitration proceeding constitutes both an absolute bar to the commencement of any arbitration proceedings with respect to the Dispute, and a waiver of the Dispute.

        9.2     Award; Enforcement. In making an award, the arbitrator shall be governed by the provisions of this Agreement and the common law and statutes of the State of Michigan. The arbitrator shall have no authority to change any provision of this Agreement. The award shall allocate the fees and expenses of such arbitration equally between or among the parties to the arbitration but each party shall pay for the cost of its counsel, witnesses and other related expenses. The determination of the arbitrator shall be final and binding upon the parties, shall not be appealable and judgment on the award or determination rendered pursuant to this Agreement may be entered in any court pursuant to Section 9.3. The decision of the arbitrator (or the failure of a party to submit the Dispute to arbitration or to appear and participate in the arbitration in accordance with the terms of Section 9.1 herein) shall be a complete defense to any suit, action or proceeding initiated in any federal, state or local court or before any administrative agency with respect to any Dispute which is arbitrable as set forth herein. This Agreement is specifically made subject to and incorporates the provisions of Michigan law governing arbitrations, MCLA 600.5001; MSA 27A.5001, as amended, and the applicable court rules, MCR 3.602, as amended. This agreement to arbitrate shall be specifically enforceable against each of the parties and no party has the right to revert to any federal, state or local court or administrative agency concerning alleged breaches of this Agreement except as otherwise provide in Sections 9.2 or 9.4 herein. Arbitration shall be the exclusive remedy for any Dispute under this Agreement except to the extent the specific enforcement of the award or specific enforcement of any term or provision of this Agreement in a court having equitable jurisdiction by a decree of specific performance or an injunction or by both is deemed necessary and appropriate by a party (including, but not limited to, any matter covered by Section 9.4), and (ii) except with respect to the non-payment of monies due and owing in accordance with the terms of this Agreement.

        9.3     Governing Law; Jurisdiction. This Agreement shall be construed and enforced in accordance with and governed by the internal laws of the State of Michigan without regard to the choice or conflict-of-law principles. The parties irrevocably agree and consent that venue is proper in the Circuit Court for the County of Oakland, State of Michigan, and shall be the sole and proper forum for any litigation arising out of or in connection with this Agreement pursuant to Section 9.2 and Section 9.4 herein. The parties agree not to commence, maintain or remove any action or proceeding arising out of or relating to this Agreement or any other documents or agreements

executed in connection with the closing of the transactions contemplated by the terms of this Agreement in any other state or federal court and each party waives any substantive, procedural, jurisdictional, convenient forum, venue or other rights to the contrary. Any and all service of process and any other notice in any such action, suit or proceeding shall be effective against any party anywhere in the world if given pursuant to the applicable court rules of the appropriate court having jurisdiction hereunder.

        9.4    <u>Specific Performance; Injunctive Relief</u>. The parties hereby acknowledge and agree that the Membership Interests are not freely purchased or sold in the open market and that the covenants made herein are of value to the parties only if fully performed by them, and that the parties (i) will incur substantial and irreparable damage, (ii) that the damages suffered by the parties may be difficult to ascertain, and (iii) that money damages may not be an adequate remedy for any actual or threatened breach of the provisions of this Agreement. Therefore, the parties hereby agree that each and every one of the terms of this Agreement and any arbitration determination shall be enforceable in the Circuit Court for the County of Oakland (without posting any bond or deposit) for the purpose of obtaining an order compelling specific performance or injunctive relief (without posting a bond or other security) without the necessity of proving it has suffered any actual damage.

**ARTICLE X - MISCELLANEOUS**

        10.1    <u>Security Law Restrictions</u>. Each Member acknowledges that any ownership security or other interest in the Company has not been registered under the Securities Act of 1933, as amended, nor has the Company been registered under any other federal laws, the laws of the State of Michigan or any other state (for purposes of this Section collectively the "Securities Acts"), because the Company is issuing the Membership Interests in reliance upon: (i) exemptions from the registration requirements of the Securities Acts providing for issuance of securities not involving a public offering, (ii) the fact that the Membership Interests are to be held by each Member for investment and (iii) the fact that exemption from registrations under the Securities Acts would not be available if the Membership Interests were acquired by a Member with a view to distribution. Accordingly, each Member hereby affirms to the Company that such Member is acquiring the Membership Interest for such own Member's account, for investment and not with a view to the resale or distribution thereof. Each Member agrees not to transfer any portion of such Member's Membership Interest unless there is an effective registration or exemption from registration relating thereto under the Securities Act of 1933 and under any applicable Securities Acts or unless the Member delivers to the Company an opinion of counsel satisfactory to the Company that such registration or other qualification under the Securities Acts is not required in connection with such Disposition. Each Member understands that the Company is under no obligation to register the Membership Interests or to assist any Member in complying with any exemption from registration under the Securities Acts if such Member should at a later date wish to transfer its Membership Interest. Furthermore, each Member realizes that the Membership Interests are unlikely to qualify for disposition under Rule 144 of the Securities and Exchange Commission unless such Member is not an affiliate of the Company and the Membership Interest has been beneficially owned and fully paid for by such Member for at least three (3) years. Prior to acquiring a Membership Interest, each acquiring Member has made an investigation of the Company and its business and the Company has made available to each such Member all information with respect thereto that such Member needed to make an informed decision to acquire the Membership Interest. Each Member has relied on its

10.21 <u>Time for Performance</u>. Time is of the essence as to the performance of each and every one of the obligations of the parties under this Agreement.

10.22 <u>Rights and Remedies; Remedies Not Exclusive</u>. No failure or delay on the part of any party in the exercise of any right or remedy under this Agreement will impair that right or remedy or be construed to be a waiver of, or acquiescence in, any inaccuracy or breach of any representation, warranty or agreement in this Agreement, nor will any single or partial exercise of any right or remedy preclude other or further exercise of that right or remedy, or of any other right or remedy. Except where it is expressly stated to be the exclusive remedy, no remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

10.23 <u>Survival</u>. Except as otherwise provided in this Agreement, the provisions of this Agreement will survive the execution, delivery and performance of this Agreement.

10.24 <u>Indemnification</u>. Each and every party who defaults under the terms of this Agreement hereby agrees to indemnify and hold harmless the nondefaulting parties from any claims, demands, losses, damages, actions, causes of action, judgments, expenses, costs, including attorney and accounting fees, obligations or liabilities which said nondefaulting parties may sustain or incur as a result of or arising out of the actions or failure to act by a party who is in default under the terms of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first written above.

"COMPANY"

**CORPORATE EAGLE JET, LLC**, a Michigan limited liability company

By: **Tradewinds Aviation, Inc.**, a Michigan corporation

Its: Manager

By: _____
Richard M. Nini, President

Dated:

**"MEMBERS"**

37

**Tradewinds Aviation, Inc.**, a Michigan corporation

By: _____
    Richard M. Nini, President

_____

_____

_____

_____

_____

_____

_____

_____

S:\Tradewinds-91106\Project Adam\Operating Agreement\Corporate Eagle Jet Op Ag 02-20-06 Clean.doc

38