# EXHIBIT D-10

# SUBSCRIPTION AGREEMENT

_September 29_, **2006**

Corporate Eagle Jet, LLC
6320 Highland Road
Waterford, Michigan 48327

Ladies and Gentlemen:

  The undersigned (the "Subscriber") hereby enters into this Subscription Agreement (this "Agreement") and irrevocably subscribes for membership interests (the "Unit" or "Units") in Corporate Eagle Jet, LLC, a Michigan limited liability company (the "LLC"), in the aggregate amount indicated on the signature page hereof. Except as provided by law, this subscription, when and if accepted by the LLC, will constitute the binding and irrevocable obligation of the Subscriber and its successors and assigns to perform this Agreement and to contribute to the capital of the LLC in accordance with the Operating Agreement (the "Operating Agreement") of the LLC, substantially in the form of Exhibit A, attached hereto and made a part hereof.

  The Subscriber acknowledges and understands that the maximum aggregate number of Units the LLC is offering or considering subscriptions is ten (10) Units ($500,000.00 per Unit). The offering will commence on the date hereof (the "Offering Date") and terminate on or before the [ninetieth] day after the Offering Date, (the "Offering Period") unless extended at the election of Tradewinds Aviation, Inc., a Michigan corporation, manager of the LLC or any successor manager(s) (the "Manager") (the "Extended Offering Period").

  The Subscriber further acknowledges and understands that this subscription is not binding on the LLC unless accepted in writing by the LLC in its sole discretion. The LLC may accept, in its sole discretion, all or any portion of the commitment amount set forth on the signature page hereto. Upon acceptance, the LLC may provide the Subscriber at any time with a written notice that all or part of the Subscriber's subscription payment is due. Upon receipt of such notice, the Subscriber must submit a check or other form of payment payable to "Corporate Eagle Jet, LLC" in the amount of ($500,000.00) per Unit, for the purchase of the number of Units provided for in such notice, but not to exceed the amount indicated by the Subscriber in this Agreement within five (5) business days of such notice. Accepted funds will be held in a separate account for the LLC (the "Subscription Account"). Subscription funds received from Subscriber whose subscriptions are not accepted shall be returned without interest.

  At any time before the end of the Offering Period or the Extended Offering Period, upon a whole or partial acceptance of any or all subscriptions for Units, the Manager may withdraw funds from the Subscription Account for use as determined by the Manager to further the

purposes of the LLC, as set forth in Section 1.2 of the Operating Agreement ("Business Purpose").

The Subscriber understands and agrees that (i) execution of this Agreement by the Subscriber and delivery of the executed Agreement to the LLC shall constitute an offer to enter into this Agreement on the terms and conditions set forth herein, which offer shall be irrevocable by the Subscriber during the Offering Period and Extended Offering Period and (ii) in consideration of and in reliance on the foregoing, the LLC will continue to expend funds and actively pursue the Business Purpose.

1. <u>Representations, Warranties, and Agreements by the Subscriber</u>. The Subscriber hereby represents, warrants, and agrees with respect to this initial subscription and with respect to all subsequent purchases of Units by the Subscriber, as follows:

(a) The Unit(s) is/are being purchased by the Subscriber and not by any other person or entity, with the finds of the Subscriber and not with the funds of any other person or entity, and for the account of the Subscriber, not as a nominee or agent and not for the account of any other person or entity. Upon acceptance of this Agreement by the LLC, no other person or entity will have any interest, beneficial or otherwise, in the Unit(s). The Subscriber is not obligated to transfer the Unit(s) to any other person or entity, nor does the Subscriber have any intention, agreement or understanding to do so. The Subscriber is purchasing the Unit(s) for investment for an indefinite period and not with a view to the sale or distribution of any part or all thereof by public or private sale or other disposition. The Subscriber has no intention of selling, granting any participation in, or otherwise distributing or disposing of any Unit(s). The Subscriber does not intend to subdivide the purchase of Unit(s) by the Subscriber with any person or entity.

(b) The Subscriber has been advised that the Units have not been registered under the Securities Act of 1933, as amended (the "Act"), or registered or qualified under any state securities law (the "Law"), on the ground that exemptions from or preemption of such registration and qualification requirements are available. The Subscriber understands that the LLC is relying in part on the representations of the Subscriber as set forth herein for purposes of claiming such exemptions or preemption and that the basis for such exemptions or preemption may not be present if, notwithstanding the representations of the Subscriber, the Subscriber intends to acquire a Unit or Units for resale on the occurrence or nonoccurrence of some predetermined event. The Subscriber understands that the accuracy or adequacy of the disclosures made to the Subscriber have not been passed upon by any state or federal securities administrator and that no prospectus has been filed with the Securities and Exchange Commission because of the limited nature of the offering and the qualifications of the Subscriber. The Subscriber understands that the LLC will not be registered as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act"), and that the Manager will not be registered as an investment advisor under the Investment Advisor's Act of 1940, as amended.

(c) The Subscriber has read the definition of "Accredited Investor", as used in Regulation D (Section 230.501-230.508) under the Securities Act of 1993, substantially in the

same form of Exhibit B, attached hereto and made a part hereof. The Subscriber covenants that Subscriber comes within the definition of an Accredited Investor for purposes of this Agreement.

    (d)    The Subscriber acknowledges receipt of financial and other information concerning the LLC and the business of the LLC, as the Subscriber considers necessary to entering into this Agreement. The Subscriber has carefully reviewed such information, including the risk factors described on Exhibit C, attached hereto and made a part hereof, and the Operating Agreement and has discussed with the LLC or a person or persons acting on the LLC's behalf any questions the Subscriber may have had with respect thereto, including but not limited to, the LLC's operating history. The Subscriber understands:

    (i)    the risks involved in this offering, including the speculative nature of the investment;

    (ii)    the financial risks involved in this offering, including the risk of losing the entire investment made by the Subscriber;

    (iii)    the lack of liquidity and restrictions on transfers of the Units;

    (iv)    the lack of a market for the resale of Units; and

    (v)    the tax consequences of this investment.

The Subscriber has consulted or had to opportunity to consult with legal, accounting, tax, investment, and other advisors to the Subscriber with respect to the tax treatment of an investment by the Subscriber in the Units and the merits and risks of an investment in the Units to the extent that such advice is deemed appropriate by the Subscriber.

    The Subscriber acknowledges that all documents, records, and books pertaining to an investment in the Units have been made available for inspection by the Subscriber and the Subscriber's attorney, accountant, and Purchaser Representative (as defined in Rule 501 of Regulation D promulgated under the Act), if any, and that the books and records of the LLC and any documentary information referred to within such information requested by the Subscriber have been made available for inspection. The Subscriber and the Subscriber's advisor(s) have had a reasonable opportunity to ask questions of and receive answers from the LLC, or a person or persons acting on its behalf concerning the offering, and all such questions have been answered to the full satisfaction of the Subscriber. No oral representations have been made or oral information furnished to the Subscriber or his or her advisor(s) in connection with the offering that are in any way inconsistent with the statements made herein.

    (e)    The Subscriber or any person holding an equity interest in the Subscriber if the Subscriber is not a natural person (i) is an "accredited investor" as defined in Regulation D under the Act; (ii) has adequate means of providing for the current needs and possible contingencies of the Subscriber, apart from any income that the Subscriber might earn from an investment in the LLC; (iii) has no need for liquidity of the investments made by the Subscriber in the LLC; and

3

(iv) can bear the economic risk of losing the entire investment of the Subscriber therein. The Subscriber, together with the Subscriber's Purchaser Representative (if any), has such knowledge and experience in financial, tax and business matters to enable the Subscriber to utilize the information made available in connection with the offering of the Units, to evaluate the merits and risks of the prospective investment, and to make an informed decision with respect thereto.

(f) If a natural person, the Subscriber is 21 years of age or over; if a corporation, limited liability company, partnership, trust or other entity, the Subscriber is authorized, empowered and qualified to execute this Agreement and to make an investment in the LLC as herein contemplated. Each of this Agreement and the Operating Agreement is valid, binding, and enforceable against the Subscriber in accordance with its terms.

(g) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of the Subscriber's obligations hereunder and under the Operating Agreement will not conflict with, or result in any violation of or default under, any provision of any governing instrument applicable to the Subscriber, or any agreement or other instrument to which the Subscriber is a party or by which the Subscriber or any of Subscriber's properties are bound, or any foreign or domestic permit, franchise, judgment, decree, statute, rule or regulation applicable to the Subscriber or the Subscriber's business or properties.

(h) If Subscriber is a partnership, a limited liability company treated as a partnership for federal income tax purposes, a grantor trust (within the meaning of Sections 671 through 679 of the Internal Revenue Code of 1986 (the "Code")) or an S corporation (within the meaning of Section 1361 of the Code) (each a "Flow-through Entity"), the Subscriber represents and warrants either that (i) no person will own, directly or indirectly through one or more Flow-through Entities, an interest in the undersigned where more than seventy percent of the value of the person's interest in the Subscriber is attributable to the Subscriber's investment in the LLC; or (ii) if one or more persons will own, directly or indirectly through one or more Flow-through Entities, an interest in the Subscriber where more than seventy percent of the value of the person's interest in the Subscriber is attributable to the Subscriber's investment in the LLC, neither the Subscriber nor any such person has or had any intent or purpose to cause such person or persons to invest in the LLC indirectly through the Subscriber in order to enable the LLC to qualify for the 100-partner safe harbor under Treas. Reg. Section 1.7704-1(h).

(i) The Subscriber understands and agrees that the rights and duties of the Subscriber under this Agreement survive the purchase, sale or transfer of the Unit(s) and that this Agreement shall be binding upon the successors, assigns and legal representatives of the Subscriber.

(j) The Subscriber has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated herein. If the Subscriber is not a natural person, the execution, delivery and performance of this Agreement by the Subscriber has been duly authorized and approved by all necessary company or other action. When executed and delivered, this Agreement shall be legally binding on and enforceable against the Subscriber in accordance with its terms.

4

(k)     The Subscriber understands and agrees that there can be no assurance that the Internal Revenue Code or the regulations thereunder will not be amended in a manner as to deprive the LLC and its members of some or all of the tax benefits they might now receive, nor that some deductions claimed by the LLC or the allocations of the Operating Agreement may not be challenged successfully by the Internal Revenue Service. Neither the LLC, the Manager nor their affiliates, assume any responsibility for the tax consequences of an investment in the LLC.

(l)     The Subscriber has readily available in cash or cash equivalent the amount necessary to pay for all or any portion of its subscription under this Agreement. The Subscriber is able to and will disburse or has disbursed such amount to the LLC, within the time periods required hereunder.

2.     Agreement to Refrain from Resales. Without in any way limiting the representations and warranties herein or the provisions of the Operating Agreement regarding the transferability of Units, the Subscriber further agrees that the Subscriber shall in no event pledge, hypothecate, sell, transfer, assign, or otherwise dispose of any Units, nor shall the Subscriber receive any consideration for Units from any person, unless and until prior to any proposed pledge, hypothecation, sale, transfer, assignment, or other disposition: (i) the Subscriber shall have furnished the LLC with a detailed explanation of the proposed disposition; (ii) the Subscriber shall have furnished the LLC with an opinion of counsel to the Subscriber in form and substance satisfactory to the LLC to the effect that such disposition will not require registration of such Units under the Act or registration or qualification of such Units under the Law or any other securities law and will not require the LLC to be registered under the Investment Company Act; (iii) Legal Counsel (defined below) for the LLC shall have concurred in such opinion and the LLC shall have advised the Subscriber of such concurrence; and (iv) the Subscriber shall have paid the costs of Legal Counsel (defined below) for the LLC.

3.     Certificates to be Legended. The Subscriber understands and agrees that an instrument or certificate, if one is provided (which is presently not contemplated), representing or relating to a Unit or Units may bear such legends as the LLC may consider necessary or advisable to facilitate compliance with the Act, the Law, and any other securities law, including, without limitation, legends stating that the Units have not been registered under the Act or registered or qualified under the Law and setting forth the limitations on dispositions imposed hereby.

4.     Units will be Restricted Securities. The Subscriber understands that the Units will be "restricted securities" as that term is defined in Rule 144 under the Act and, accordingly, that the Units must be held indefinitely unless they are subsequently registered under the Act and registered or qualified under any applicable Law or any other laws, or exemptions from such registration and qualification are available. The Subscriber understands that the LLC is under no obligation to register Units under the Act, to register or qualify Units under any applicable Law or to in any way assist the Subscriber to comply with any exemption under the Act, the Law or any other law. The Subscriber understands that federal tax laws provide certain limitations on the transferability of Units, including, without limitation, a limit on the number of Units that may

be transferred within a tax year and that the LLC will not transfer a Unit if the transfer would require the LLC to register under the Investment Company Act.

5. <u>Indemnification</u>. The Subscriber hereby agrees to indemnify and defend the LLC and its affiliates, and any participating broker-dealers (the "Indemnified Parties"), and hold them harmless from and against any and all liability, damage, cost, or expense incurred on account of or arising out of:

(a) Any breach of or inaccuracy in the representations, warranties, or agreements of the Subscriber herein or in any document provided by the Subscriber to the LLC, including, without limitation, the defense of any claim based on any allegation of fact inconsistent with any of said representations, warranties, or agreements;

(b) Any failure of the Subscriber to fulfill any of the terms or conditions of this Agreement;

(c) Any disposition of any of the Units of the Subscriber contrary to any of said representations, warranties, or agreements; and

(d) Any action, suit, or proceeding based on (i) a claim that any of said representations, warranties, or agreements were inaccurate or misleading; (ii) any cause of action for damages or redress from the Indemnified Parties or any of them under the Act, the Law or other securities law, or (iii) any disposition of Units.

6. <u>Operating Agreement</u>. The Subscriber acknowledges that Subscriber has read and agrees to execute and be bound by the Operating Agreement if this subscription is accepted.

7. <u>Power of Attorney</u>. The Subscriber hereby irrevocably constitutes and appoints the LLC and the Manager, and each of them, with full power of substitution and resubstitution, the true and lawful attorney of the Subscriber, for the Subscriber, and in the name, place and stead of the Subscriber and for the use and benefit of the Subscriber to sign, execute, deliver, certify, acknowledge, swear to, file, record and publish:

(a) The Operating Agreement in substantially the form furnished by the LLC to the Subscriber, the articles of organization of the LLC and any amendments to either of such documents as provided in the Operating Agreement;

(b) Any other certificates, instruments, agreements and documents necessary to qualify or continue the LLC as a limited liability company wherein members have limited liability in the states or other jurisdictions where the LLC deems necessary or advisable;

(c) All conveyances, assignments, documents of transfer or other instruments and documents necessary to effect the assignment of an interest in the LLC, the substitution of a Subscriber or the dissolution and termination of the LLC in accordance with the Operating Agreement; and

(d) All filings and submissions pursuant to the Act and the Law, any other applicable law, regulation, rule, order, decree or judgment which, in the opinion of said attorney, may be necessary or advisable in connection with the business of the LLC.

The power of attorney granted herein is coupled with an interest, shall be irrevocable, shall survive the bankruptcy of the Subscriber, shall be deemed given by each and every assignee and successor of the Subscriber, and may be exercised by said attorney by listing the name of the Subscriber, along with the names of other persons for whom said attorney is acting, and executing the Operating Agreement, the articles of organization of the LLC, any amendments thereto, and such other certificates, instruments, agreements, and documents with the single signature of said attorney, or an officer of said attorney acting on behalf of said attorney as such for all of the persons whose names are so listed.

8. Legal Counsel. The Manager of the LLC has retained Kotz, Sangster, Wysocki and Berg, P.C. ("KSWB") as legal counsel ("Legal Counsel") in connection with the offering of the Units and expects to retain KSWB in connection with matters relating to the LLC. *KSWB has not and will not represent the Subscriber in connection with the formation or reformation of the LLC, the offering of the Units, the management and operation of the LLC, or any dispute which may arise between the members of the LLC on one hand and the Manager of the LLC, the Manager(s) of such Manager, the LLC and/or any of their affiliates (collectively the "Management") on the other hand ("Fund Legal Matters").* The Subscriber will, if Subscriber desires counsel on a Fund Legal Matter, retain Subscriber's own independent counsel with respect thereto and will pay all fees and expenses of such independent counsel. The Subscriber agrees that KSWB may represent the Management in connection with any and all Fund Legal Matters (including any dispute between the Management and the Subscriber or any other member of the LLC) and waives any present or future conflict of interest with Legal Counsel regarding Fund Legal Matters.

9. Successors. The representations, warranties, and agreements contained in this Agreement shall be binding on the Subscriber and the successors or legal representatives of the Subscriber and shall inure to the benefit of the respective successors and assigns of the LLC and, where applicable, the Manager.

10. Notices. Any notices or other communications required or permitted hereby shall be given by registered or certified, U.S. first-class mail, postage prepaid, return receipt requested, and if to the LLC, at the address at the head of this Agreement, and if to the Subscriber, at the address set forth below the Subscriber's signature hereto, or to such other addresses as either the LLC or the Subscriber shall designate to the other by notice in writing. All such notices and other communications shall be deemed to be received when given as set forth above.

11. Entire Agreement; Amendments. This Agreement constitutes the entire agreement and understanding among the parties with respect to the subject matter hereof and supersedes all prior agreements, negotiations, arrangements, and understandings relating to the subject matter of this Agreement. This Agreement may be amended, modified, superseded, or canceled, and any of the terms, covenants, representations, warranties, or conditions in this

Agreement may be waived, only by a written instrument signed by each party to this Agreement or, in the case of a waiver, by or on behalf of the party waiving compliance. The failure of any party at any time to require performance of any provision in this Agreement shall not affect the right at a later time to enforce that or any other provision. No waiver by any party of any condition, or of any breach of any term, covenant, representation, or warranty contained in this Agreement, in any one or more instances, shall be deemed to be a further or continuing waiver of that or any other condition or breach.

12. <u>Governing Law</u>. This Agreement and the rights and obligations of the parties under this Agreement, shall be governed by, and interpreted and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

IN WITNESS WHEREOF, the undersigned Subscriber executes, accepts, adopts, and agrees to be bound by this Agreement by executing the signature page attached hereto on the date indicated, and having such signature notarized on the acknowledgment page.

Number of Units Subscribed: _____1_____

Amount of Subscription ($500,000.00 per Unit): $ 500,000.00

*FOR COMPLETION BY SUBSCRIBERS WHO ARE NATURAL PERSONS: (i.e. individuals)*

Dated: _____, 2006

_____
Subscriber's Name *(print or type)*

_____
Subscriber's Social Security No.

_____
Subscriber's Signature *(sign)*

*FOR COMPLETION BY SUBSCRIBERS WHO ARE NOT NATURAL PERSONS: (i.e. corporations, partnerships, limited liability companies or other entities)*

Dated: September 29, 2006

AL AIR, LLC
Subscriber's Name *(print or type)*

[signature]
Subscriber's Signature *(sign)*

[redacted]
Subscriber's Tax I.D. No.

8

Albert F. Kessel
_____
*(print or type name of authorized representative)*

Its  Manager
_____
*(title of authorized representative)*

**Subscriber's Mailing Address:**
(for formal notice)

Al Air, LLC
c/o G-7550 S. Saginaw St., Ste. #5
Grand Blanc, MI 48439

**Subscriber's Other Address (if any):**
(home business or main office)

Al Air, LLC
c/o 5923 Burnham Road
Naples, FL 34119

The undersigned, as the Manager of the LLC, hereby accepts the foregoing subscription on behalf of the LLC as follows:

Number of Units: __1__

Amount of Subscription Accepted ($500,000.00 per Unit): $ 500,000.00

**CORPORATE EAGLE JET, LLC**, a Michigan limited liability company

By: Tradewinds Aviation, Inc., a Michigan corporation

Its: Manager

Dated: __12-4__, 2006

By: _[signature]_
Richard M. Nini

Its: President

9